IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>           Plaintiff, | |
| v. | No.   4:22-CR-577 |
| EMERY GOODLEY,<br>           Defendant. | |

**UNITED STATES REPONSE TO DEFENDANT'S OPPOSED
MOTION TO REVOKE THE DETENTION ORDER**

Defendant moves to reconsider the detention order for Defendant Emery Goodley. The detention statute permits the court to reopen a detention hearing at any time before trial, if the judicial officer finds that information exists that was not known to the movant at the time of the detention hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure defendant's appearance and the safety of the community.  18 U.S.C. 3142(f)(2).  The Defense Motion appears to restate that which was already offered at the hearing.

For these reasons, the government respectfully asks the Court to deny defendant's motion.

1. **FACTUAL AND PROCEDURAL BACKGROUND**

The Defendant was indicted on November 16, 2022 for one count of Interference with Commerce by Robbery, One Count of Conspiracy to Possess with Intent to Distribute and one count of Carrying a Weapon in Relation to a Drug Trafficking Offense. These charges arise from events that took place on August 14, 2022 during an investigation of the criminal street gang Free Money Gangsters. The details are laid out as follows:

Free Money Gangsters (hereafter Freemoney) is a neighborhood based criminal street gang/enterprise located in southeast Houston in the Southern District of Texas, specifically in the South Park neighborhood. Although some individual members may have historical associations with larger criminal street gang alliances such as People's Nation (Bloods), Freemoney does not directly operate in concert or collaboratively with any nationwide gangs. Freemoney is, however, a member of the Young Scott Block (YSB) alliance, commonly referred to as Push-Up, which is an overarching criminal street gang in Southeast Houston. YSB and Freemoney are currently involved in a gang conflict with members of the 100% Third Ward (103) alliance, which is commonly referred to as Scoot-Up. The conflict between the YSB and 103 alliances has been occurring for over a decade and is commonly referred to as the southeast gang war by law enforcement. At least 80 homicides are attributed to this gang war.

The Houston Police Department became aware of Freemoney in 2017. Lawfully obtained Instagram Messages of documented Freemoney members revealed the founding members of Freemoney during a group discussion. The question was asked who started Freemoney "On bet I'm tryna see who started dis freemoney shit" which received the response "It's really just man,rellD, smiley,barl, Noble, & that nigga zo that I just really know official w/ it". "man" is known to law enforcement as the now deceased Layandre Fontenot, "rellD" is known to law enforcement as Terrell **DAVIS**, "smiley" is known to law enforcement as Jcoi **BARLEY**, "barl" is known to law enforcement as Carl Joulevette, "noble" is known to law enforcement as Noble Washington, and "zo" is known to law enforcement as the now deceased Alonzo Irving. All are documented by the Houston Police Department as members of Freemoney or its umbrella YSB and are regarded as senior members and/or leadership.

Members of each rival gang alliance continuously taunt each other on social media platforms such as Instagram, which directly leads to targeted assassinations in the form of drive-by shootings. Members interact with each other's Instagram posts and commonly post comments or remarks that are considered inflammatory or disrespectful by rival 103 alliance members. Drive-by shootings and targeted violence is often driven by back and forth comments between members of rival gangs which escalate to threats. The public nature of these posts casts spot lights on the individuals involved, most of whom have made a threat of violence and been called out by rival gang members, necessitating the individuals follow through with a violent act or else face public criticism for cowardice by fellow gang members and rival gang members alike.

Lawfully obtained Instagram Messages between documented Freemoney gang members revealed the expectation that members and associates participate in gang shootings to maintain position in the gang. In June of 2020 Freemoney members discussed "Damo's" unwillingness to participate in a drive-by shooting, stating that they were in a car together with rifles ("Sticks), and told "Damo" that they were going to do a drive-by shooting of rival gang members ("pass by the opps/opposition)" in Hiram Clarke ("the Clarke") and "Damo" told them to let him out of the car ("drop me off"). "We ina car… with them sticks we said man we finna pass by the opps Spot in the Clarke he just 'hell nahhh drop me off'", "Y'all should of heard him". Responses from the group regarded "Damo" as a coward "❓❓❓ pussy boy".

In addition to narcotics sales, Freemoney is well known by law enforcement for conducting surveillance on high-end stores that engage in interstate commerce and then targeting customers after making purchases. Freemoney members conduct these robberies in Houston, as well as traveling to other states, including California, to commit the robberies. In total, Freemoney members are suspected of committing over fifty aggravated robberies during 2020 – 2021. In fifteen of those incidents, a victim was shot during the robbery. In total, eight Freemoney members have been arrested and charged for these types of crimes.

## PENDING CHARGES

On July 15, 2022 the wire intercept of communications for Jcoi **BARLEY**'s mobile device were authorized. During the period of intercept, **BARLEY**

and his associates of the gang had committed a number of violent acts leading up to August 14, 2022.

On August 14, 2022, at approximately 12:00 pm, Markael **BROWN** posted on his Instagram page, username "freemoney_kael" the following: "Mandatory !! 5pm FREEMONEY MEETING DM US FOR THE ADDY. If YOU "NOT THERE" U "NOT" FREEMONEY. If You On The Clock Tap In With Somebody." Your Affiant knows, based on training and experience, that it is common for violent gang members to use social media to promote meetings and that violent gang members often meet up prior to committing criminal activity together. Law enforcement responded to this post with surveillance at 8100 Leonora, a hub for the gang's activity.

On August 14, 2022, at approximately 3:45pm law enforcement (hereafter collectively "SURVEILLANCE TEAM") initiated physical surveillance in the vicinity of **BROWN**'s apartment located at 8100 Leonora St., Houston, Texas (hereafter "8100 LEONORA"). Additionally, DPS rotary wing aircraft (hereafter "DPS AIR") and FBI fixed wing aircraft (hereafter "FBI AIR") conducted surveillance. Additionally, an HPD pole camera in the vicinity of 8100 LEONORA was monitored by SURVEILLANCE TEAM.

On August 14, 2022, at approximately 5:37pm, **BARLEY** called **BROWN**. During the phone call, **BARLEY** asked **BROWN** if everyone was over there and situated. **BROWN** confirmed and **BARLEY** stated that **BARLEY** and "tuttie" (known by law enforcement to be Jymonte **MCCLENDON**) were on the way. **BROWN**

asked **BARLEY** where "Jericho" (known by law enforcement to be **TERRY Ardoin**) was and **BARLEY** said that **BARLEY** would call **TERRY**.

On August 14, 2022, at approximately 5:40pm, **DAVIS** posted on his Instagram page, username "freemoneyrelld_" the following: "Y'all better push up rn dm for that addy It's mandatory OnlyTheFree."

On August 14, 2022, at approximately 6:04pm, **BARLEY** received a phone call from **TERRY**, who was identified by consistent tone, cadence, and pronunciation. During the call, **TERRY** told **BARLEY** that they needed three more people and that "bro" had told **TERRY** that there were 3 or 4 people in there. **TERRY** said that "bro" told **TERRY** that there were 3 "automatics" and over 10 "P's" as well as money upstairs. **BARLEY** said that **BARLEY** was headed to the meeting and that people at the meeting were already asking if they could get it on it but **BARLEY** told them it was "bro's play." **TERRY** said that **TERRY** needed people that could "hit licks, kill and do everything they needed to do." **TERRY** said that **TERRY** had seen the location and had followed cars to the freeway but there was another person at the location. **BARLEY** said that the person inside was "ratchetman," and **BARLEY** described "ratchetman" as a Purple Heart gang member. **BARLEY** told **TERRY** that "ratchetman" would probably fight back and **BARLEY** asked **MCCLENDON** what **MCCLENDON** thought about it. **MCCLENDON** could be heard in the background of the call agreeing with **BARLEY**. **TERRY** said that "they" would head over there right now, and **TERRY** said **TERRY** already had the plan mapped out. Your Affiant knows, based on training and experience,

6

that "automatics" in this context usually refers to automatic weapons, to include firearms and firearms with automatic switches. Additionally, your Affiant knows that "over 10 P's" is common street slang for "over 10 pounds" of narcotics. When **BARLEY** said it was "bro's play," your Affiant knows that this is a common way of gang members describing someone else as having a target planned for an armed robbery or drive-by shooting. Your Affiant also knows that the conversation described above is a common type of conversation had by gang members that are actively conspiring to commit a violent robbery of a specific location. Based on this telephone conversation, it was clear to law enforcement and your Affiant that the lick had already been discussed with those attending the meeting at 8100 Leonora and those in attendance were ready and willing to participate.

"Ratchetman" was known by law enforcement as Corey SHEPHARD (since deceased on August 31, 2022). SHEPHARD was a member of "purple heart gang," a known rival gang of FREE MONEY. Your Affiant spoke with HPD Officers who had conducted surveillance and believed SHEPHARD was living with Xavier FASION at 922 T.C. Jester Blvd, Houston, Texas at that time. FAISON was known to sell large quantities of marijuana and frequently advertised his marijuana on open-source Instagram page, username "damnsacc.". On August 14, 2022, SHEPHARD posted on Instagram and the image was recognized by investigators as taking place at 922 T.C. Jester Blvd, Houston, Texas. This knowledge was based on open-source images located of the residence located at 922 T.C. Jester Blvd, Houston, Texas, and compared to the image posted on August 14, 2022 on Instagram by SHEPHARD. On August 14, 2022, at approximately 4:52pm,

7

federally authorized GPS data from **TERRY's** mobile device showed that **TERRY** was in the area of 922 T.C. Jester Blvd, Houston, Texas. Your Affiant knows, based on training and experience, that it is common for violent gangs to "case" locations prior to committing a home invasion or robbery. Your Affiant believes that when **TERRY's** mobile device was in the area of 922 T.C. Jester Blvd., Houston, Texas, that **TERRY** was looking at the location as a possible target for a robbery.

On August 14, 2022, at approximately 6:35pm, **BARLEY** and **MCCLENDON** were seen by SURVEILLANCE TEAM being dropped off at 8100 LEONORA in a black Chevrolet Cruze with license plate number PMB0616 (hereafter "CHEVROLET CRUZE"). On the same date, at approximately 6:38pm, **TERRY** arrived at 8100 LEONORA as the solo occupant of a white Toyota Camry with a temporary license plate number of 0794F47 (hereafter "TOYOTA CAMRY"). After **TERRY** entered 8100 LEONORA, **TRAVONTE Ardoin** and Emery **GOODLEY** arrived at 8100 LEONORA in a red Hyundai Elantra (hereafter "HYUNDAI ELANTRA") with license plate number LBH9518. **TRAVONTE** and **GOODLEY** were seen entering 8100 LEONORA.

On August 14, 2022, at approximately 8:06pm, **TERRY, BARLEY,** and **BROWN** exited the apartment at 8100 LEONORA and entered into **TERRY's** TOYOTA CAMRY with **TERRY** driving. TOYOTA CAMRY left the vicinity of 8100 LEONORA and SURVEILLANCE TEAM followed the vehicle. The TOYOTA CAMRY was followed to 922 T.C. Jester Blvd., Houston, Texas, where the TOYOTA CAMRY passed

by the residence several times before returning back to 8100 LEONORA. SURVEILLANCE TEAM stayed with the TOYOTA CAMRY the entire time. The TOYOTA CAMRY arrived back at 8100 LEONORA at approximately 9:01pm.

On August 14, 2022, at approximately 9:20pm, **BARLEY** called **BROWN**. During this call, **BARLEY** asked **BROWN** if they were all good. **BROWN** confirmed and say that they were "trying to put it together real quick." Your Affiant believes, based on training, experience, and the prior events described above, that **BROWN** was finalizing plans to commit a robbery at 922 T.C. Jester Blvd., Houston, Texas.

On August 14, 2022, at approximately 10:27pm, **TRAVONTE, MCCLENDON,** and **GOODLEY** walked out of 8100 LEONORA and stood together near the parked vehicles in front of 8100 LEONORA. **TRAVONTE** was seen putting on black gloves and then **TERRY** was seen handing **TRAVONTE** a black pistol with an extended magazine. **TRAVONTE** was seen putting the black pistol in his pocket. **GOODLEY** was also seen putting on black gloves and was wearing a black ski mask on the top of his head. **TRAVONTE, MCCLENDON,** and **GOODLEY** then walked south, out of view of the HPD pole camera.

On August 14, 2022, at approximately 10:31pm, **Jakobe** ANDERSON (hereafter "JAKOBE"), Chase FRANKLIN-WILLIAMS (hereafter "FRANKLIN-WILLIAMS"), and **DAVIS** were seen walking out of the apartment at 8100 LEONORA and walking north, out of view of the HPD pole camera.

9

On August 14, 2022, at approximately 10:35pm, SURVEILLANCE TEAM followed four vehicles from the vicinity of 8100 LEONORA and followed the four vehicles as they drove in the direction of 922 T.C. Jester Blvd, Houston, Texas. SURVEILLANCE TEAM identified four vehicles, three of which are pertinent to this proffer and their occupants, in order of movement from 8100 LEONORA:

- Red Hyundai Elantra, Texas license plate LBH9518. **MCCLENDON** was the driver, **GOODLEY** was front passenger, and **TRAVONTE** was rear passenger.

- Black Chevrolet Equinox, Texas license plate PXJ5832. **BROWN** was the driver, **DAVIS** was the front passenger, JAKOBE was the rear right side passenger, and FRANKLIN-WILLIAMS was the rear left side passenger.

- White Toyota Camry, temporary license plate 0794F47. **TERRY** was the driver and sole occupant.

SURVEILLANCE TEAM followed the four vehicles toward the direction of 922 T.C. Jester Blvd., Houston, Texas. FBI AIR and DPS AIR also followed the vehicles. During the transit, the red Nissan Altima described above was seen separating from the group and began driving erratically. The red Nissan Altima was driving in a manner consistent with gang members looking to lose law enforcement surveillance units. The remaining three vehicles described above continued toward 922 T.C. Jester Blvd, Houston, Texas. When the three vehicles exited the freeway at the T.C. Jester exit, HPD Crime Reduction Unit (CRU) and SURVEILLANCE TEAM initiated traffic stops of the red Hyundai Elantra and the black Chevrolet Equinox. Both the red

Hyundai Elantra and black Chevrolet Equinox failed to stop for HPD CRU units, which pursued both vehicles.

The black Chevrolet Equinox described above was reported stolen with HPD. Officer activated his emergency equipment to conduct a traffic stop on the stolen Chevrolet Equinox at the 2200 block of T.C. Jester Blvd. The vehicle refused to stop and traveled northbound at the 2200 block of T.C. Jester. The vehicle then turned westbound on Darling Street, continued to evade, ran several stop signs, and turned southbound at Arabelle Street. The vehicle lost control and crashed at the intersection of Arabelle Street and Darling Street in Harris County, Texas. When the vehicle crashed, all individuals exited from the passenger side doors. Officers ran after two individuals that ran south on Arabelle Street and observed both of them jumping a fence at a house located at 2209 B Arabelle Street. Both individuals had red clothing on, one of which was wearing red pants and the other was wearing a red hooded sweatshirt. Officers observed one of the individuals and recognized him to be **DAVIS,** hiding in the backyard of 2209 B Arabelle St. **DAVIS** then responded to verbal commands and was taken into custody. **DAVIS** had a magazine of ammunition with an unknown number of unfired bullets on his person and a pair of gloves and a ski mask located underneath him. **JAKOBE** was arrested that evening having fled from this vehicle and having traveled in the direction of a dropped Glock firearm that had a switch on it.

While searching the area, Officers observed a subject hiding in a nearby brush line. When the scene was secure, Officers searched the area for evidence or weapons. Officers observed two firearms laying on the ground near the front passenger

11

side door of the black Chevrolet Equinox. Officer Price recovered one black Glock 19 with a prohibited fully automatic switch attached to the rear of the weapon. The second firearm was recovered near the rear right passenger door and was identified as a black Glock 19 with a prohibited fully automatic switch attached to the rear of the weapon. Officers cleared both weapons for safety and observed a round chambered in each of the two recovered weapons. Additionally, a Glock with a switch (without a magazine) was found lying in the direction of where Davis ran.

Officers with the Houston Police Department saw the red Hyundai Elantra with Texas license plate LBH9518, for fail to use a turn signal and have expired registration and initiated a traffic stop. Upon initiating the traffic stop, the vehicle did not stop and evaded. The vehicle traveled eastbound on Larkin St and then northbound on North Sheppard. The vehicle ran multiple stop signs and around the 500 block of North Sheppard, Officer observed an arm stretch out a window of the red Hyundai Elantra back right passenger seat and toss a handgun. Officers later recovered that handgun. The vehicle continued to flee and collided with another vehicle at the intersection of North Sheppard and W 19th Street. Both vehicles became disabled at that time. The driver of the Hyundai Elantra was identified as **MCCLENDON**, the front right passenger was **GOODLEY**, and the back right passenger was **TRAVONTE. GOODLEY** was in possession of a Mac-10 firearm. Specifically, the firearm was on the floorboard of the front right passenger within arms reach of where **GOODLEY** was seated. The firearm was in plain view. **TRAVONTE** was seated as the back right passenger, where Officer previously saw a handgun tossed from. **MCCLENDON**,

12

**GOODLEY**, and **TRAVONTE** were all taken into custody.

## 2.　STANDARD OF REVIEW

When reviewing a magistrate judge's order of detention, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release. *See United States v. Reuben*, 974 F.2d 580, 585 (5th Cir. 1992); *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). In conducting that review, the district court "review[s] the record of the hearing before the magistrate, as well as [any] additional evidence presented" but is not required to hold another hearing. *United States v. Baker*, 703 F. Supp. 34, 36 (N.D. Tex. 1989).

A defendant should not be released pending trial if a judicial officer determines that "release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). "[T]he lack of reasonable assurance of either the defendant's appearance or the safety of others or the community is sufficient; both are not required." *Fortna*, 769 F.2d at 249 (citation omitted). A determination that no condition or combination of conditions will prevent the risk of flight must be supported by a preponderance of the evidence. *See United States v. Trosper*, 809 F.2d 1107, 1109 (5th Cir. 1987). A

determination that no condition or combination of conditions will assure that the defendant does not pose a danger to a person or the community must "be supported by clear and convincing evidence." 18 U.S.C. § 3142(f).

Courts should consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *see also United States v. Acosta-Leyva*, 751 F. App'x 594, 595 (5th Cir. 2019).

Further, where, as here, there is probable cause to believe that the defendant committed an offense under 18 U.S.C. § 924(c), a rebuttable presumption exists that "no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)]. And even if the defendant presents "evidence tending to rebut the presumption," the presumption "nevertheless remains in the case and is a factor to be considered." *Fortna*, 769 F.2d at 251; *see also Hare*, 873 F.2d at 798-99 ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society.").]

3.  **ARGUMENT AND ANALYSIS**

    A.  **Defendant is a danger to the community, and thus should be detained.**

Defendant's motion largely ignores the factors that this Court must consider in determining whether a defendant should be detained pending trial. Those factors strongly support the defendant's continued detention.

As an initial matter, the government is entitled to a presumption that no combination of release conditions will assure the safety of the community because the defendant faces charges of 18 U.S.C. § 924(c). *See* 18 U.S.C. § 3142(e)(3). The Defendant cannot overcome this presumption for the reasons explained below.

   i.  **Nature and circumstances of this offense (3142(g)(1))**

Defendant is charged with multiple charges and has significant sentencing exposure. The Defendant is facing a minimum of 7 years up to Life in prison. This is to be stacked on top of whatever sentence that he receives for the Robbery and/or Drug Trafficking Offense.

As discussed above, the facts of these charges are violent in nature. Not only does this Defendant carry a firearm, but he does so with the intent of carrying it into a residence in which individuals are expected to be in house. This factor thus favors detention.

   ii.  **Weight of the evidence (3142(g)(2))**

15

The weight of the evidence against defendant strongly supports his detention. The wire evidence paints a clear picture of what the Defendant and his co-conspirators intended to accomplish. That, along with live surveillance by law enforcement and helicopter lean to a great weight of evidence against the Defendant. As the Defense Motion states, Judge Sheldon stated that he believed- having heard the case agent- that the evidence in the case was strong.

### iii. Defendant's history and characteristics (3142(g)(3))

The Defendant has a history of assaultive behavior- consistent with his actions on August 14, 2022. Of note, the pre-trial report shows that the Defendant has twice committed Assaults for which he has been sentenced. And, perhaps most importantly, despite his age the Harris County Court system determined after a careful and detailed review of his history and the facts of his case to certify him as an adult and sentence him to 6 years confinement. Just 7 years and a few months after his sentence he has imbedded himself with a group of violent gang members ready to invade another's home.

Defendant's history and characteristics thus support detention.

### iv. Nature and seriousness of the danger to another person or the community posed by release (3142(g)(4))

The Defendant's criminal history and charged offense show a history of violence. It should be further noted that since Indictment, proffers and interviews have shown that Emery Goodley was regularly hanging out at the Freemoney

gang's central hub.

      Thus, this factor supports detention.

## 4. CONCLUSION

For these reasons, the government respectfully asks the Court to deny defendant's motion.

Respectfully submitted,

ALAMDAR HAMDANI
United States Attorney

*/s/ Lisa M. Collins*
Lisa M. Collins
Assistant United States Attorney
1000 Louisiana St., Suite 2300
Houston, Texas 77002
Telephone: 713-567-9700

## CERTIFICATE OF SERVICE

I certify that on July 11, 2023 this response was filed with the clerk of court for the U.S. District Court, Southern District of Texas, which will electronically forward this response to defendant's counsel.

*/s/Lisa M. Collins*
Lisa M. Collins
Assistant United States Attorney