United States Courts
Southern District of Texas
F I L E D

SEP 0 9 2025

Nathan Ochsner, Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:22-cr-00577-1 |
| | § | |
| JCOI BARLEY, | § | |
| Defendant | § | |

## DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT REGARDING THE HOBBS ACT

TO THE HONORABLE DISTRICT COURT:

COMES NOW the Defendant, Jcoi Barley ("Barley"), through the undersigned court-appointed counsel, and respectfully requests that this Court quash Count One of the indictment, for the reason that Count One relies on an incorrect application of the Hobbs Act, 18 U.S.C. § 1951. As grounds for this motion, Barley submits the following arguments and authorities.

### A. The Allegation in Count One

1.      Count One of the indictment is based on statutory language in the Hobbs Act, 18 U.S.C. §1951, which applies to "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery ... or conspires to do so ... " The commodity in this instance was ten pounds or more of marijuana stored at 922 T.C. Jester Blvd in Houston,

Texas.  It was alleged that the marijuana was "in lawful possession" by others.

2.      Barley contends that the Hobbs Act is not properly applicable to a mere plan to commit a robbery.  By the Hobbs Act's own terms, the Act is not applicable unless a defendant's actions taken, with or without other actors, will at least be likely to obstruct, delay, or affect commerce.  That applies to a "conspiracy" to violate the Act as well.  Where a conspiracy has no actual effect of obstructing, delaying, or affecting commerce, a conviction under the Hobbs Act would be improper.  The burden of proof is on the Government to prove the effect beyond a reasonable doubt.

3.      To illustrate the point made in Paragraph 2 above, a court need not look beyond the circumstances which gave rise to the passage of the Hobbs Act.  At a time when a great deal of produce came into lower New York City via the Holland Tunnel, in order to be distributed to the hundreds of small grocery stores in the city, and when other trucks came from as far away as Southern textile mills, bringing fabric for use in New York's Garment District, organized groups of men halted the trucks and demanded that the trucks be turned over to New York drivers.  The out-of-state drivers were hesitant to relinquish control of their trucks, but they would be allowed to continue to drive their own trucks in return for paying a modest fee.  Given the number of such trucks entering New York City in a year, the take for these racketeers was enormous.  These shakedowns rarely resulted in violence, although the risk

2

violence always hovered in the air for those drivers who chose to defy the racketeers. Congressman Hobbs was not from New York or New Jersey, but rather from central Alabama. New Orleans was another place where there were relative few ways to enter the city with an owner-driven truck, basically Highways 11 and 61 north of New Orleans, which crossed long areas of swamp on causeways. So the farmers in the Black Belt of Alabama (roughly the areas around Demopolis and Selma) probably got a smaller version of the same abuse by racketeers.

4.    The Government's burden of proof for a Hobbs Act violation includes the need to prove beyond a reasonable doubt that commerce (meaning interstate commerce) would be either obstructed, delayed, or affected. The original examples easily showed "obstruction," and sometimes "delay." The full scope of what "affected" meant is not at all clear from the words of the Act, but it is reasonable to conclude that an *adverse* effect was the Congressional concern.

### B. The Unanimity Issue from *Richardson*

5.    Congress would not have used redundant terms. It is reasonable to conclude that "obstruct" and "delay" mean different things. This brings to mind the unanimity concern which was discussed in *Richardson v. United States*, 526 U.S. 813 (1999):

[T]he Government in a CCE case may well seek to prove that a

3

defendant, charged as a drug kingpin, has been involved in numerous underlying violations. The first of theses considereations increaseds the likelihood that treating violations simply as alternative means, by permitting a jury to aovid discussion of the specific factual details of each, violation, will cover up wide disagreement among the jurors about just what the defendant did, or did not, do. The second consideration significantly aggravates the risk (present at least to a small degree when multiple means are at issue) that juror, unless required to focus upon specific detail, will fail to do so, simply concluding from testimony, say, or bad repuation, that where there is smoke there must be fire.

A jury should not be allowed to convict Barley if, for example, six members think he "obstructed" commerce and the other six think he "delayed" commerce. What does the verb "affect" mean? That is one of those inherently vague verbs, like "influence" or "produce," on which there is no assurance that the jurors are all even in agreement about what Barley did.

6.   Rather than simply tracking the vague words of the vague Hobbs Act, the Government should have to show disclose whatever information they have as to the precise role he played, and which of the three verbs used in the Hobbs Act are supported by the evidence.

## C. The Absence of Discovery Regarding the Owners of 922 T.C. Jester

7.   The Government has produced voluminous recordings and text screenshots discussing the general criminal behavior of the Freemoney gang. An important topic which has been neglected, however, concrns the persons responsible

4

for the accumulation of narcotics and possibly cash at 922 T.C. Jester.

8.    Public records show that the house at that address was built in 2017. But the large, ultra-modern style house makes it stick out like a sore thumb in the neighborhood, as it is surrounded by one-story houses built in the 1950's and 1960's. A notable feature of the house is that it has a large expanse of glass on the front, facing the street, but a near absence of windows on the sides. A medieval castle, relatively safe from outside attack, comes to mind.

9.    The parties responsible for the construction of the house were two Middle Eastern men. The discovery provided by the Government shows virtually nothing about their backgrounds, their businesses, their families, and especially their wealth. Wealth can be earned in many ways, but one pathway to wealth is participating in organized crime.

10.   It might be possible for an enterprise, such as a research laboratory hospital, to lawfully possess ten pound or more of marihuana, and in some states other than Texas, private individuals may lawfully possess marijuana. But 922 T.C. Jester definitely is in Texas, and it was not a reasearch laboratory or any other kind of premises where possession of that amount of marihuana would be "lawful."

5

10.    There is no evidence in the discovery materials indicating that Barley even knew the men who owned the property. Somehow the armed criminal known as "Ratchetman" did know them well enough to be left alone in charge of the house.  There is a recorded dialog between Barley and one of the Ardoin brothers about "Ratchetman."  It would be a rare thing indeed for legitimate business who invest in newly-built upscale housing to also know a street criminal like "Ratchetman."   Something does not add up here, and one of the purposes of discovery is to clarify such mysteries.

Wherefore Barley urges that Count One of the indictment be dismissed.

Respectfully submitted,

/s/ Winston Earle Cochran, Jr.
Winston Earle Cochran, Jr.
Texas Bar No. 04457300
P. O. Box 2945
League City, TX 77574
Tel. (713) 228-0264
E-mail: winstoncochran@comcast.net

Counsel for Defendant Barley

## **CERTIFICATE OF SERVICE**

I, the undersigned counsel for the Defendant, hereby certify that a copy of this motion has been electronically served on counsel for the United States at the following address on this the 8th day of September, 2025:

>  Benjamin Hunter Brown
>  Assistant United States Attorney
>  United States Attorney's Office for the
>      Southern District of Texas
>  1000 Louisiana Street, Ste 2300
>  Houston, TX 77002
>  VIA E-MAIL: benjamin.brown@usdoj.gov


>  /s/ Winston Earle Cochran, Jr.
>  Winston Earle Cochran, Jr.
>  Counsel for Defendant Jcoi Barley