**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CASE NO. 4:22-cr-00577** |
| **(15) MARK ATLEE a/k/a "Lil Mark"** | |
| **Defendant.** | |

### GOVERNMENT'S RESPONSE TO DEFENDANT MOTION TO DISMISS

The United States of America, by and through John G.E. Marck, Acting United States Attorney for the Southern District of Texas, Assistant United States Attorney, Charles Hagerman, David L. Jaffe, Chief of Violent Crime and Racketeering Section, United States Department of Justice, and Trial Attorney, Ralph Paradiso, respectfully moves that the Court deny the Defendant, Mark Atlee's, Motion to Dismiss the Superseding Indictment for lack of subject matter jurisdiction wherein the Defendant has ratified his involvement in the RICO conspiracy and Drug conspiracy after his eighteenth birthday, and accordingly Defendant is not a "juvenile" under the Federal Juvenile Delinquency Act of 1938 ("JDA") and no certification from the Attorney General is necessary to confer subject matter jurisdiction on this Court.

### PROCEDURAL BACKGROUND

On or about January 8, 2026, the Defendant, Mark Atlee was charged in Count 1 with conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. § 1962(d), and in Count 18 with a drug distribution conspiracy in violation of 21 USC § 846.

The Superseding Indictment alleges in Count 1 that a criminal enterprise known as Free Money (also known as the "Free Money Gangsters" or "Freemoney") exists, that it affects

1

interstate and foreign commerce, and it has committed a pattern of racketeering including multiple acts involving murder, robbery, narcotics distribution, and weapons trafficking. Specifically, the Superseding Indictment alleges that the Defendant is a member or associate of Free Money and that the Defendant not only agreed that, either himself or others would commit at least two acts of racketeering, but the Defendant himself participated in racketeering activity including an attempted murder, armed home invasion/robbery, weapons trafficking, and narcotics trafficking. The time periods for both conspiracy counts are alleged to have begun not later than on or about January 1, 2016, and continued thereafter until, on or about January 8, 2026.

On or about February 11, 2026, the Defendant was arrested on the superseding indictment. (ECF No. 253). On February 17, 2026, Magistrate Judge Richard W. Bennett ordered the Defendant detained (ECF No. 322).

On or about May 12, 2026, the Defendant filed a motion to dismiss the superseding indictment, arguing that Defendant "is a 'juvenile' and the Government did not receive authority from the United States Attorney General to allow the Defendant to be tried in District Court." (ECF No. 401).  Defendant argues that, because the government has not certified Defendant's case in accordance with 18 U.S.C. § 5032, this Court lacks subject matter jurisdiction, and the superseding indictment should be dismissed. *Id*. The Defendant also argues that the government has violated speedy trial under the JDA.

These arguments are without merit because the Defendant ratified his conspiratorial conduct after his eighteenth birthday.  Therefore, the JDA does not apply.

### FACTUAL STATMENT

The Defendant was born in February 2005. Accordingly, the Defendant turned 18 years old in February 2023 and then turned 21 years old in February 2026.  The Defendant was 20 years and

11 months old at the time of the superseding indictment.  In addition, the Defendant reaffirmed his participation in the Free Money enterprise after his 18th birthday as explained below.

After Defendant turned 18, on March 10, 2023, Pearland police responded to a disabled vehicle, a Green Kia Sole. The Defendant, and the female owner of the vehicle, were the only occupants.  Officers smelled marijuana and searched the Defendant and recovered 0.19 oz of marijuana. The vehicle is believed to have been used in the August 3, 2022, attempted murder that is an overt act of the RICO conspiracy.[1]

On or about November 22, 2024, Houston Police Department (HPD) officers conducted a traffic stop of a vehicle driven by the Defendant. Also, in the vehicle with the Defendant was his co-defendant and alleged fellow Free Mony member or associate, Deandre Thompson (also known as "man man"), and three females. A gun was found under the passenger seat where Thompson was seated, and he had a small amount of marijuana in his pocket.

On or about November 28, 2024, the Defendant was arrested for Burglary of Habitation. Law enforcement agents reviewed the Defendant's prisoner calls from the Harris County jail.[2] Law enforcement located a call from the Defendant to a female caller. During the call the Defendant told the female caller about running into someone while in jail and recognizing the person.  As the discussion goes on, the Defendant told the caller, "I ain't gonna lie ***I'm Free Money*** but at the end of the day I ain't gonna lie" and then the sentence trails off and is incomprehensible before changing subjects. The Defendant was later released from jail.

---

[1] *See* Superseding Indictment (ECF No 216), Count One, paragraph 147.
[2] At the beginning of every jail call an automated voice informs both the inmate and the call recipient that phone calls made by an incarcerated individual at Harris County jail are not private, are recorded, and may be monitored.  The warning must be acknowledged before the conversation can proceed.

On May 14, 2025, after the Defendant's declaration stating, "I'm Free Money," HPD officers conducted a traffic stop of a vehicle containing the Defendant. Inside the car were the Defendant and his co-defendants, alleged Free Money members or associates, Deandre Thompson and Shakeil Anderson, who were all seated in the back seat of the vehicle. A search of the vehicle recovered a Ruger pistol the glove box, and an AK-47 magazine under the rear portion of the front passenger seat. An AKM-47 style assault rifle, an AR-15 style assault rifle, and a stolen Glock 19 pistol with a switch[3] were in the trunk.

As explained above, on or about February 11, 2026, the Defendant was arrested on the superseding indictment (ECF No. 253) and detained on February 17, 2026 (ECF No. 322). Law enforcement reviewed the Defendant's prison calls while he has been in federal custody. [4] In a jail call on or about May 15, 2026, the Defendant told the other party on the call, "free fat beezy, fuck the feds I'll be home real soon, you know what I'm saying. *We ain't doing no rat shit in this hoe*. You see what I'm saying? *All rats get exterminated*." This statement is significant because in criminal enterprises, such as Free Money, becoming an informant against the enterprise is subject to retribution by the enterprise.

In another jail call, on or about May 16, 2026, the Defendant told the other party to the call, "you know my partner I be with, not 'man man' but the other one." "Man man" is the nickname of Deandre Thompson, a co-defendant and alleged member or associate of Free Money, and the person with whom the Defendant was stopped with on November 22, 2024 and May 14, 2025, as discussed above.

---

[3] A "switch" is slang for a type of machinegun conversion device typically added to the rear of a Glock brand semiautomatic handgun, which qualifies as a machinegun conversion device pursuant to 26 U.S.C. § 5845(b) (National Firearms Act): Defines a "machinegun" to include any part or combination of parts specifically designed and intended to convert a weapon into a machinegun.

[4] At the beginning of every jail call an automated voice informs the caller of the price of the call and then informs both the inmate and the call recipient that phone calls made from a federal prison and is not private, are recorded, and may be monitored. The warning must be acknowledged before the conversation can proceed.

In a jail call on or about May 17, 2026, the Defendant and a female call recipient were discussing the events of the Court's Status Conference on May 13, 2026. The Defendant told the recipient that "you know, cause they made the two niggas that's talking…they made them niggas sit by each other than be with the rest of the guys." Then when discussing the Government's motion for a protective order, the Defendant said, "man we already know who did what and said what. Ain't no reason for ya'll to do that shit." The conversation shifts to talking to the female's possible boyfriend whom she said was from Missouri City.  The Defendant stated, "you know I am strictly South Side." Around five minutes and thirty seconds into the conversation, the female call recipient said, "this is going to show you who is solid and who is not," to which the Defendant responded, "fo shit show." Later in the conversation, Defendant stated that while in the holdover prior to Status Conference on May 13, 2026, "we was just excited as a motherfucker to see each other…you know Keil."

Next, the discussion turned to everyone's (codefendants) current location in federal custody. The Defendant discussed his codefendants by their nicknames, locations, and said "everybody trying to come together" and they have been talking through the little "whooo wap." The female acknowledged that code word by saying, "ohh yeah yeah, correct, I know how that shit go." This call shows the Defendant's continued involvement with Free Money and the on-going conspiracy. In the call, the Defendant and the other party discussed persons that they believe are cooperating with the Government, knowledge of the overt acts, identifying others who are "solid", in other words won't cooperate with the Government, and that the group are all trying to continue to band together while in detention.

## ARGUMENT

**I.**      **The Federal Juvenile Delinquency Act of 1938 Does Not Apply to Defendant Since His Conspiratorial Conduct Was Ratified After His Eighteenth Birthday.**

Defendant's motion to dismiss the superseding indictment for lack of subject matter jurisdiction argues that Defendant is a juvenile for the purpose of this case since he was eighteen or younger at the time he committed the overt acts listed in the contextual portions of the indictment. Similar JDA jurisdictional arguments have been rejected when made in the context of conspiracy prosecutions that span a defendant's eighteenth birthday.

"Although the crime of conspiracy is complete at the moment the deal is struck, it is a continuing crime." *United States v. Tolliver,* 61 F. 3d 1189, 1199 (5th Cir. 1995), *cert. granted, judgment vacated sub nom. Sterling v. United States,* 516 U.S. 1105, 116 S. Ct. 900, 133 L. Ed. 2d 834 (1996), and *cert. granted, judgment vacated sub nom. Moore v. United States,* 519 U.S. 802, 117 S. Ct. 40, 136 L. Ed. 2d 4 (1996); *see also United States v. Wong*, 40 F.3d 1347, 1366 (2d Cir. 1994) (holding that, "Both substantive RICO and RICO conspiracy offenses are continuing crimes"). That is, "a conspirator commits the crime each day he remains a member of the conspiracy.) *United States v. Maddox,* 944 F. 2d 1223, 1233 (6th Cir.) (also holding that "one who enters a conspiracy prior to his eighteenth birthday can be tried as an adult if he continues in the conspiracy after that time").

. . As such, after a defendant turns eighteen, "a defendant may be tried for a conspiracy which temporally overlaps his eighteenth birthday—if the government can show that the defendant ratified his involvement in the conspiracy after reaching majority." *United States v. Bams*, 858 F.3d 937 ,948 (5th Cir. 2017) (citing *United States v. Guerrero*, 768 F.3d 351, 362 (5th Cir. 2014)). "A juvenile 'ratifies' his involvement in a conspiracy by continuing to participate in an ongoing conspiracy after his eighteenth birthday.  However, a person who does absolutely nothing to further the conspiracy or to reaffirm membership in it after his 18th birthday cannot be held criminally liable as an adult in federal court." *United States v. McClaren*, 13 F.4th 386, 408 (5th Cir. 2021)

6

(quoting *States v. Peters*, 382 F.3d 300, 309 (5th Cir. 2002)); *see also Guerrero*, 768 F.3d at 362 (*quoting Tolliver*, 61 F.3d at 1200) ("Ratification in this context simply means that a defendant 'continu[es] to participate in an ongoing conspiracy after his 18th birthday.'").[5] For example, in *Guererro*, the Fifth Circuit affirmed the jury's verdict because the evidence showed that the defendant ratified his involvement in the RICO conspiracy by taking part in four of the six predicate offenses post majority and the other two predicate acts, were both supported with "significant evidence of post-eighteen conduct." *Guerrero*, 768 F.3d at 362 (defendant was sixteen during Mexican Mafia conspiracy and twenty when indictment was returned).  In *Bams*, the Fifth Circuit affirmed that where the defendant engaged in a conspiracy for nine months after he turned eighteen, the JDA was inapplicable. *Bams*, 858 F.3d at 949.

Evidence presented of a defendant's participation in a conspiracy is not limited to the overt acts or predicated acts expressly listed in the indictment. *See United States v. Johnson*, 825 Fed. Appx. 156, 172 (5th Cir. 2020) (unpublished) (citing *United States v. Carlock*, 806 F.2d 535, 550 (5th Cir. 1986)) ("But the evidence presented at trial need not be limited to overt or predicate acts expressly listed in the indictment, so long as the defendant has adequate notice…. Here, Johnson had ample notice that the government intended to introduce evidence of the shooting, which occurred within the relevant period alleged in the indictment, as evidence intrinsic to the charged conduct."). Thus, the evidence of Defendant's conduct post-majority can be admitted to show the Defendant ratified  his membership in the conspiracy after his eighteenth birthday, even if the conduct is not listed in the indictment.

---

[5] Some courts looking at the issue have analogized ratification in the conspiracy context to ratification doctrine in contract law. *U.S. v. McClaren*, 13 F.4th 386, 408n.7 (5th Cir. 2021) (citing *U.S. v. Wong,* 40 F.3d 1347, 1365 (2d Cir. 1994)  ("[J]ust as a minor legally incapable of entering a contract may nonetheless be found to have 'ratified' a contract by taking actions after attaining majority consistent with an intent to be bound by it, . . . so a defendant may ratify his pre-eighteen participation in a conspiracy by continued participation after attaining majority")).

The government is prepared to present evidence at trial that Defendant became involved in the RICO conspiracy as a juvenile and effectively ratified his membership after his eighteenth birthday by continuing to support the enterprise's racketeering activities. As noted above, the Defendant was caught multiple times with his codefendants, who are alleged fellow Free Money members or associates, with weapons.  Additionally, the Defendant verbally ratified his continued involvement in the conspiracy by stating "I am Free Money" on a jail call after his eighteenth birthday and during the charged timeframe. Since his arrest, he has shown his continued involvement with Free Money and the conspiracy.

The government is aware of its burden of proof at trial and is prepared to meet that burden and present this evidence to the jury. Accordingly, Defendant's motion to dismiss the superseding indictment for lack of subject matter jurisdiction is without merit and should be denied.

**II.    DEFENDANT'S SPEEDY TRIAL AND DETENTION ARGUMENTS FAIL BECAUSE THE JDA'S SPEEDY TRIAL PROVISIONS DO NOT APPLY TO THIS PROCEEDING.**

Defendant argues that he is entitled to the benefit of the JDA's speedy trial provision pursuant to 18 U.S.C. § 5033, which requires trial within thirty days for juvenile defendants absent good cause. This argument fails for the same fundamental reason as his jurisdictional argument: the JDA's provisions, including its speedy trial protections, apply ***only*** to proceedings properly governed by the JDA. The Defendant is properly prosecuted as an adult under the ratification doctrine, and as such, the JDA, and its speedy trial provision, is inapplicable.

Likewise, Defendant's related argument for release from pretrial detention under the JDA fails and is inapplicable because this is an adult proceeding. The magistrate judge's detention order was entered under those adult standards and should not be disturbed on the basis of JDA provisions that have no application here.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Honorable Court deny Defendant's motion to dismiss the superseding indictment. The JDA's procedural requirements were not triggered here because the Defendant ratified his participation in the charged RICO and drug conspiracies after reaching the age of majority. The superseding indictment is proper, this Court has jurisdiction, and the speedy trial provisions the Defendant invokes have no application to this adult proceeding.

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney
Southern District of Texas


/s/ *Charles Hagerman*
CHARLES HAGERMAN
Assistant United States Attorney


DAVID L. JAFFE
Chief, Violent Crime and Racketeering Section
United States Department of Justice


/s/ *Ralph Paradiso*
RALPH PARADISO
Trial Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of June 2026, a true and correct copy of the foregoing document was served on defense counsel for the above-named defendant(s) via CM/ECF electronic docketing system

/s/ *Charles Hagerman*
CHARLES HAGERMAN
Assistant United States Attorney